IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

PROGRESSIVE NORTHERN
INSURANCE COMPANY,

        Plaintiff,

v.

JAMES L. BATESEL, TRINITY
BRICK SALES, INC., TRINITY
BRICK SALES, LLC, and STATE
AUTO PROPERTY AND CASUALTY
INSURANCE COMPANY,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 09-CV-478-HE

---

**DEFENDANTS JAMES L. BATESEL, TRINITY BRICK SALES, INC., TRINITY BRICK SALES, LLC, AND STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

---

Respectfully submitted,

Maurice G. Woods, II, OBA No. 16582
MCATEE & WOODS, P.C.
410 Northwest 13th Street
Oklahoma City, Oklahoma 73103
Telephone: (405) 232-5067
Fax: (405) 232-0009
**ATTORNEYS FOR DEFENDANTS**

# TABLE OF CONTENTS

Table of Contents ................................................................................................................ii

Table of Authorities ...........................................................................................................iii

STATEMENT OF THE CASE .............................................................................................1

UNDISPUTED MATERIAL FACTS ...................................................................................2

STANDARD FOR REVIEW ...............................................................................................5

BRIEF IN SUPPORT ...........................................................................................................6

      I: THE DEFENDANT'S NEGLIGENCE, IF ANY, MERELY
      FURNISHED A CONDITION BY WHICH THE INJURY
      WAS POSSIBLE. A SUBSEQUENT INDEPENDENT ACT
      CAUSED THE INJURY TO PLAINTIFF .........................................................7

            APPLICATION TO THE CASE AT BAR ...................................................14

      II: OKLAHOMA'S STATUTORY LAW PROHIBITS AN ACTION
      FOR CONTRIBUTION OR INDEMNITY WHERE JOINT AND
      SEVERAL LIABILITY DOES NOT EXIST; THEREFORE, PLAINTIFF
      DOES NOT HAVE A VALID CAUSE OF ACTION AGAINST
      DEFENDANTS UNDER THE THEORY OF EQUITABLE
      ESTOPPEL .....................................................................................................17

            APPLICATION TO THE CASE AT BAR ...................................................20

CONCLUSION ...................................................................................................................23

CERTIFICATE OF ELECTRONIC FILING .....................................................................23

## TABLE OF AUTHORITIES

### CASES

*American Agency Systems, Inc. v. Marceleno,*
2002 OK CIV APP 79, ¶ 18 , 53 P.3d 929, 935 ............................................................19

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 250, 106 S.Ct. 2505, 251, 91 L.Ed 2d 202 (1986) ......................................6

*Atherton v. Devine,* 1979 OK 132, ¶4, 602 P.2d 634, 635, f.3 .................................................8, 15

*Beesley v. United States,* 364 F.2d 194 (10ᵗʰ Cir.1966) .................................................................7

*Bowen v. Tucker,* 2007 OK CIV APP 57, ¶ 14, 164 P.3d 1155, 1158 ......................................... 17

*Capshaw v. Gulf Ins. Co.,* 2005 OK 5,¶ 11, 107 P.3d 595, 602, f.28 .............................................1

*Carter v. Schuster,* 2009 WL 4829197 (Okla. 2009) ...........................................................16, 17

*Celotex Corp. v. Catrett,*
477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed 2d 265 (1986) ........................6

*Cheatham v. Van Dalsem,* 1960 OK 75, 350 P.2d 593 .................................................................8

*Cleveland v. Stanley,* 1932 OK 179, 155 Okl. 272, 9 P.2d 10 ......................................................10

*Evans v. Caldwell,* 1967 OK 154, 429 P.2d 962 ...........................................................8, 10, 11, 14

*Gypsy Oil Co. v. Marsh,* 1926 OK 246, 121 Okla. 135, 248 P. 329......................................16, 17

*Harrison v. St. Joseph's Regional Medical Center of Northern Oklahoma, Inc.,*
1995 OK CIV APP 61, ¶11,  904 P.2d 146 ....................................................................18

*Harrison v. St. Joseph's Regional Medical Center of Northern Oklahoma, Inc.,*
1995 OK CIV APP 61, ¶11,  904 P.2d 146 ....................................................................18

*Jackson v. Jones,* 1995 OK 131, 907 P.2d 1067 ......................................................................8, 15

*Laubach v. Morgan,* 1978 OK 5, ¶4, 588 P.2d 1071, 1072 .....................................................18, 19

*Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir. 1993) ............................6

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)..................6

*Messler v. Simmons Gun Specialties, Inc.*, 1984 OK 35, ¶ 18, 687 P.2d 121, 128 ......................17

*Mote v. Hilyard*, 1961 OK 40, 358 P.2d 844 ........................................................................8, 11

*Nat'l Union Fire Ins. Co. v. A.A.R. Western Skyways, Inc.*,
    1989 OK 157, § 14, 784 P.2d 52, 56; 23 O.S. §§ 13, 14 ................................................19

*Norman v. Scrivner-Stevens, Co.*, 1949 OK 48, 201 Okla. 218, 204 P.2d 277......................8, 13

*Panama Processes, S.A. v. Cities Service Co.*,
    1990 OK 66, ¶¶ 21-22, 796 P.2d 276, 287-88.................................................................17

*Phillips Petroleum Co. v. Robertson*, 1952 OK 60, 207 Okl. 80,247 P.2d 501.................12, 13, 14

*Smith v. Midland Brake, Inc.*, 138 F.3d 1034 (10th Cir. 1998) .........................................6

*Sturdevant v. Kent*, 1958 OK 48, 322 P.2d 408 ............................................... 12, 13, 14

*Thor v. Dunkley*, 1970 OK 157, 474 P.2d 403 .....................................................8, 14

*Transport Indemnity Company v. Page*, 1963 OK 230, 406 P.2d 980 ...........................8

*Vogt v. General Tel. Co. of Southwest*, 413 F.Supp. 4 (E.D.Okl.1975) ...................7, 14

*Wasson v. Shoffner*, 2006 OK CIV APP 151,¶¶ 13-14, 149 P.3d 1085, 1086. .............6,7

*Woodward v. Kinchen*, 1968 OK 152, 446 P.2d 375...........................................8, 9, 10

## STATUTES

23 O.S. § 11................................................................................................................18

23 O.S. § 12................................................................................................................18

23 O.S. § 13 ........................................................................................................... 18, 19

23 O.S. § 14................................................................................................................19

23 O.S. § 15 .........................................................................................................17, 18

47 O.S. § 11-1003(a) ............................................................................................... 1

85 O.S. § 44 ............................................................................................................ 19

## OTHER AUTHORITIES

Fed.R.Civ.P.56 .................................................................................................. 1, 5

Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed., § 2641 ............................ 13

COME NOW the Defendants, James L. Batesel, Trinity Brick Sales, Inc., Trinity Brick Sales, LLC, and State Auto Property and Casualty Insurance Company, and move this Court to grant Summary Judgment in their favor and against the Plaintiff pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Rule 13 of the Rules for District Courts of Oklahoma, for the reason that the undisputed facts of this case establish that the Defendants are entitled to judgment as a matter of law.

## STATEMENT OF THE CASE

This lawsuit is the result of a two-vehicle accident involving Mrs. Carol Kinney's small Mercedes and a dump truck hauling a full load of dirt. The accident occurred on Coltrane Road and Oakdale Forrest Road, which served as the entrance to a housing addition. Prior to the accident, local truck driver James Batesel was driving a semi-truck for Trinity Brick Sales, Inc. and Trinity Brick Sales, LLC, and was delivering a load of brick to the housing addition off of Oakdale Forrest Road. As Mr. Batesel pulled his vehicle into Oakdale Forrest Road, a private drive leading into a gated community, he noted that there was a closed gate which he had not been told to expect, nor had he been given a code to open the gate. Unable to safely back his vehicle across Coltrane Road to exit the entrance area, Mr. Batesel pulled his vehicle as close to the gate as he safely could, leaving only 6.25 feet of the rear of his trailer overhanging the edge of the southbound lane of Coltrane. Mr. Batesel then exited his vehicle to survey the gate and surroundings for possible assistance, while he called the builder of the home to which he was delivering the brick in an attempt to obtain a gate code.

At that time, Mrs. Kinney exited the housing addition from the exit gate left of the entrance gate where James was stopped. She stopped and spoke with him, offering to open the entrance gate for him with her electronic opener. However, her gate opener was inoperable with her vehicle facing

1

away from the gate. Mrs. Kinney then said she would turn her vehicle around so it would face the entry gate, enabling her to use her gate opener to let James enter. James politely declined, stating he would just call the builder for the gate's code. However, Mrs. Kinney insisted she would open the gate, and James conceded. At this point, he began to climb back into his truck.

During the conversation between Mrs. Kinney and James Batesel, David Payne was driving a dump truck with a load of dirt to be delivered to a road-construction site on Kelly Road in Edmond. As he traveled southbound on Coltrane Road, Mr. Payne neared the entrance to Ms. Kinney's housing addition on his right. Seeing the rear of Mr. Batesel's trailer partially occupying his lane, Mr. Payne made a quick decision not to use his brakes. Rather, he simply took his foot off of the gas pedal of his dump truck and continued to coast at full speed, carried by the momentum of a full load of dirt and the downhill grade of Coltrane Road. As he approached the entrance to the housing addition, rather than braking, Mr. Payne crossed the double yellow line into the oncoming lane of traffic to circumvent the trailer's end that occupied a small portion of the roadway.

As Mr. Payne traveled downhill at full speed in the lane for oncoming traffic, Mrs. Kinney pulled out of the drive, past the tail of the trailer and into the northbound lane of traffic, intending to turn her car around to face the entrance gate. Before Mrs. Kinney could fully enter the northbound lane of Coltrane Road, Mr. Payne's vehicle, still traveling southbound in the northbound lane, slammed into the driver's side door of her vehicle.

## UNDISPUTED MATERIAL FACTS

1. On November 14, 2005, around 8:30 a.m., Carol Kinney was involved in an automobile accident in which a dump truck driven by David Ralph Payne collided with the driver's side of Mrs. Kinney's Mercedes. *(See Defendant's Exhibit No. 1,*

2

*Deposition of Carol Kinney, Page 44, Lines 2-25 and Page 45, Lines 1-20.)*

2.   At the same time, the Defendant James Batesel was sitting in his parked truck in the entryway drive to the housing addition which Mrs. Kinney was exiting.   *(See Defendant's Exhibit No. 2, Deposition of James Batesel, Page 52, Lines 6-9.)*

3.   At no time during the accident was Defendant Batesel's truck in motion.   *(See Defendant's Exhibit No. 3,Deposition of James Batesel, Page 29, Lines 20-25; Page 30, Lines 1-10; Page 31, Line 25; Page 32, Lines 1-25. See also Defendant's Exhibit No. 4, Deposition of Carol Kinney, Page 34, Lines 11-25; Page 35, Lines 1-2; Page 37, Lines 20-25; and Page 38, Lines 1-4.)*

4.   The driver of the dump truck, David Ralph Payne, between Memorial Road and the point of the accident, had accelerated to 45 miles per hour and was aware that the lanes were separated by double solid yellow lines. *(See Defendant's Exhibit No. 5, Deposition of David Ralph Payne, Page 16, Lines 12-25 and Page 17, Lines 1-12.)*

5.   David Ralph Payne was aware that double solid yellow lines on the roadway indicate that a driver may not pass vehicles in the lane designated for oncoming traffic. *(See Defendant's Exhibit No. 6, Deposition of David Ralph Payne, Page 19, Lines 4-7.)*

6.   David Ralph Payne first saw the vehicle which was parked by Defendant James Batesel in the entryway to the Oakdale housing addition while he was approximately sixty yards away from the trailer.  *(See Defendant's Exhibit No. 7, Deposition of David Ralph Payne, Page 91, Lines 8-18. See also Defendant's Exhibit No. 8, Photographs of Reconstruction, attached.)*

7.   David Ralph Payne crossed over double yellow lines on the roadway, entering the

3

oncoming lane of traffic without braking, before colliding with Mrs. Kinney. *(See Defendant's Exhibit No. 9, Deposition of David Ralph Payne, Page 16, Line 25; Page 17 Lines 1-11; Page 24, Line 25; and Page 23, Lines 1-15.)*

8.    Prior to the collision, and prior to pulling out of her addition, Carol Kinney could not see oncoming traffic. *(See Defendant's Exhibit No. 10, Deposition of Carol Kinney, Pg. 44, Lines 2-12; Pg. 87, Lines 7-10; and Pg. 126, Lines 20-24.)*

9.    At the time of impact between Mr. Payne's vehicle and Ms. Kinney's vehicle, Mr. Payne's vehicle was completely in the oncoming lane of traffic. *(See Defendant's Exhibit No. 11, Deposition of David Ralph Payne, Page 91, Lines 3-7.)*

10.   Chris Ferris is an employee of Plaintiff and worked in the capacity of Senior Claims Representative at the time of the underlying accident. *(See Defendant's Exhibit No. 12, Deposition of Chris Ferris, Page 5, Lines 21-23; Page 8, Lines 16-25; Page 9, Lines 16-18; Page 10, Lines 2-16.)*

11.   Chris Ferris handled the claim file for the underlying accident in his capacity as Plaintiff's employee and made a decision on behalf of Plaintiff regarding the liability of all parties involved. *(See Defendant's Exhibit No. 13, Deposition of Chris Ferris, Page 16, Lines 11 - 16; Page 25, Line 21-25; Page 26, Lines 1, 22-25; Page 29, Lines 3-16; Page 32, Lines 3-9.)*

12.   Chris Ferris, acting in his capacity as Plaintiff's employee, made a liability determination regarding the involved parties with a understanding of the meaning of "contributory negligence" and made a liability determination which employed the legal concept of "contributory negligence." *(See Defendant's Exhibit No. 14,*

4

*Deposition of Chris Ferris, Page 32, Lines 10-22; Page 40, Lines 13-25; Page 41, Lines 1-25; Page 42, Lines 1-4, 6-10, 12-15.)*

13.     Chris Ferris, acting in his capacity as Plaintiff's employee, assigned liability to the parties as follows: Mr. Payne was determined to be 80 percent at fault for the accident, Defendant Batesel was determined to be 15 percent at fault for the accident, and Mrs. Kinney was determined by be 5 percent at fault for the accident. *(See Defendant's Exhibit No. 15, Deposition of Chris Ferris, Page 34, Lines 2-25; Page 35, Lines 1-4.)*

14.     Chris Ferris, acting in his capacity as Plaintiff's employee, authored correspondence to the insurance carriers of the other parties involved, advising them of his liability decision. *(See Defendant's Exhibit No. 16, Deposition of Chris Ferris, Page 38, Lines 11-16, 23-25; Page 39, Lines 1-10. See also Defendant's Exhibit 17, Correspondence from Chris Ferris re: Progressive's Liability Determination for the Loss on Nov. 14, 2005.)*

15.     Plaintiff now brings this claim pursuant to 12 O.S. § 832 for contribution among joint tortfeasors. *(See Defendants' Exhibit 18, Plaintiff's Complaint.)*

## **STANDARD FOR REVIEW**

Motions for Summary Judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.   Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   A principal purpose of the

summary judgment ruling is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed 2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial--whether, in other words, are there any genuinely factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 251, 91 L.Ed 2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact by informing the court of the basis for its motion. *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir. 1993). This burden, however, does not require the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex*, 477 U.S. at 323.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Smith v. Midland Brake, Inc.*, 138 F.3d 1034 (10th Cir. 1998). The court must consider all evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). A "material" fact is one "that might affect the outcome of the suit under governing law," and the issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

6

## I.

### THE DEFENDANT'S NEGLIGENCE, IF ANY, MERELY FURNISHED A CONDITION BY WHICH THE INJURY WAS POSSIBLE. A SUBSEQUENT INDEPENDENT ACT CAUSED THE INJURY TO PLAINTIFF.

There is a plethora of case law regarding the doctrine of "cause versus condition." That case law clearly shows that if an individual is found to have merely constituted a condition which enables an accident rather than being the cause of an accident, then the issue of negligence is a question of law for determination by the courts. *See Wasson v. Shoffner*, 2006 OK CIV APP 151, ¶¶ 13-14, 149 P.3d 1085, 1086.

In *Vogt v. General Tel. Co. of Southwest*, 413 F.Supp. 4 (E.D.Okl.1975), the defendant's utility vehicle was stopped on the roadway, causing plaintiffs' vehicle to stop behind it, where the plaintiffs were then hit by a third party. The District Court held that the "purported negligence" of the defendant in failing to provide adequate warning of its public utility operations on the roadway was a "prior and remote cause under Oklahoma law which merely furnished a condition" for the plaintiff's injuries. *Id.* at 7. Further, as the collision could not have been foreseen or reasonably anticipated as the probable result of the defendant's negligence, the defendant could not be found liable for plaintiffs' damages. *Id.* at 8.

In *Beesley v. United States*, 364 F.2d 194 (10th Cir.1966), which is cited by the *Vogt* court, a United States government vehicle, in use by two Department of Agriculture employees, ran out of gasoline and stalled on the 'up' side of two lane traffic overpass during daylight hours. *Id.* at 195. The employees sat in the stalled vehicle and attempted to coast back down the overpass, signaling oncoming traffic from inside the vehicle. *Id.* At that time, the plaintiffs approached from the rear and stopped, and a following truck struck the plaintiffs' vehicle in the rear. *Id.* The court found that

the government's negligence in violating Oklahoma "stopping and standing" statute and in failing to warn oncoming traffic from outside of the vehicle created a mere condition which set the stage for the collision and was not the proximate or concurring cause thereof. *Id.* at 196.  Consequently, the sole and proximate cause was the negligence of the truck driver, so that United States was not liable. *Id.*

Oklahoma's state courts have also consistently found that a vehicle stopped along the side of a roadway constitutes a condition, not a proximate cause, in the event of an ensuing accident nearby.   The ongoing theme in these decisions is that "the parked car cases involve a defendant whose conduct operating alone would not have resulted in harm to anyone except for the negligence of another party.  The conduct of the defendant in the parked car cases did not amount to a completed tort since the parking of the car in itself did not result in injury." *Atherton v. Devine*, 1979 OK 132, ¶4, 602 P.2d 634, 635, f.3; *see also Jackson v. Jones,* 1995 OK 131, 907 P.2d 1067.

In *Thor v. Dunkley*, 1970 OK 157, 474 P.2d 403, the Oklahoma Supreme Court found that the defendant's vehicle, which was stopped on the side of the road but jutting four feet into the lane of traffic, for the purpose of changing a flat tire, was a remote - not proximate - cause of damages after passing vehicles rear-ended each other.  In its decision, the Court stated, "the proximate cause of an injury must be the efficient cause which sets in motion the chain of circumstances leading to the injury; if the negligence complained of merely furnishes a condition by which the injury was made possible and a subsequent independent act caused the injury, the existence of such condition is not the proximate cause of the injury."   *Id.* at ¶ 16, 474 P.2d at 405, *citing Norman v. Scrivner-Stevens Co.*, 1949 OK 48, 201 Okl. 218, 204 P.2d 277; *Cheatham v. Van Dalsem*, 1960 OK 75, 350 P.2d 593; *Evans v. Caldwell*, 1967 OK 154, 429 P.2d 962; *Mote v. Hilyard*, 1961 OK 40,

8

358 P.2d 844; *Transport Indemnity Company v. Page*, 1963 OK 230, 406 P.2d 980.

In *Woodward v. Kinchen*, 1968 OK 152, 446 P.2d 375, the plaintiff filed for damages for her injuries arising out of a collision which occurred while she was a passenger in the defendant's vehicle. As the defendant's car was stopped in the westbound lane of a street in Oklahoma City, so the defendant could look out of his window and speak to an acquaintance whose vehicle was stopped next to him, facing eastbound in the eastbound lane. *Id.* at ¶2, 446 P.2d at 376-77. At that time, the plaintiff noticed a "loud noise" from the motor of a car which was about 100 feet west of the stopped vehicle. *Id.* The plaintiff saw that the noise came from a vehicle being backed eastward down the street toward defendant's stopped car at speeds between 35 and 50 miles per hour. *Id.* The backing car swerved down the street, striking parked vehicles, until it reached and struck the defendant's stopped car. *Id.* at ¶5, 446 P.2d at 377.

In court, the plaintiff alleged that the defendant had stopped his car in the street in violation of 47 O.S. § 11-1003(a), which prohibits the stopping, standing or parking of a vehicle on the roadway side of any vehicle stopped or parked at the edge or curb of a street. *Id.* Reviewing her allegations, the court noted:

> It appears that plaintiff's evidence was sufficient to show [the defendant] may have been negligent in stopping his car on the roadway side of the pickup truck that was parked to his right...Under the circumstances, it is obvious that if [the defendant] had not stopped but had proceeded on, the collision would not have occurred and plaintiff would not have been injured. However, the law requires that the injuries of plaintiff result directly and proximately from the negligence of the defendant.

*Id.* ¶ 10, 446 P.2d at 377. In fact, the proximate cause of any injury must be the efficient cause which sets in motion the chain of circumstances leading to the injury and if the negligence merely

9

furnishes a condition by which the injury was possible and a subsequent independent act caused the injury, the existence of such condition is not the proximate cause of the injury. *Id.* at ¶13 , 446 P.2d at 378.   The court found that the defendant's negligence "merely furnished a condition by which the injury was possible, and the subsequent independent acts of [the backing car's driver] caused the injury." *Id.* at ¶14, 446 P.2d at 378. Regarding the plaintiff's claims that the negligence of the defendant and the minor driver concurred to create her injuries, the court disagreed:

> The negligence of [the defendant] merely furnished a condition by which the injury was possible and the injury resulted from the intervening and unrelated acts of [the minor] in backing his car at a high rate of speed for a distance of about 100 feet.  It is our opinion that the injury could not have been foreseen nor reasonably anticipated as the probable result of [the defendant] stopping his car in the street.  Not only could the action of [the minor] not be foreseen, but it was the sole and only cause of the collision and therefore the proximate cause.

*Id.* at ¶ 15, 446 P.2d at 378.

The court also distinguished the facts in *Kinchen* from those of *Cleveland v. Stanley*, 1932 OK 179, 155 Okl. 272, 9 P.2d 10, in which a motor truck loaded with hay was stopped on the paved highway, left there after dark without lights on the rear of the truck, and struck on the rear by the plaintiff who was driving on the highway that night. *Id.* at ¶16, 446 P.2d at 378.   The *Woodward* court differentiated between the facts leading to the varying outcomes by noting that "[in] the present case it was daylight ... The evidence does not show a causal connection between [the defendant's] act and plaintiff's injury." *Id.* at ¶¶16-17, 446 P.2d at 378  The court concluded that, while the defendant "may have been negligent in stopping his car in the street, it is not shown that such act was the proximate cause of the injury" because "[t]he evidence does not show a causal connection between [the defendant's] act and plaintiff's injury." *Id.* at ¶17, 446 P.2d at 378

10

In *Evans v. Caldwell*, 1967 OK 154, 429 P.2d 962, the plaintiff was fishing on the raised 24-inch curb on the north side of a bridge when one of the defendants parked his vehicle directly opposite the plaintiff, about 15 to 18 feet away, on the south side of the road. *Id*. at ¶ 2, 429 P.2d at 963. The bridge was found to be 24 feet wide, and the parked vehicle was six-and-one-half feet wide. *Id*. at ¶ 9, 429 P.2d at 963. The second defendant was traveling on that road when he hit his brakes, first struck the first defendant's parked car, and then skidded into the plaintiff. *Id*. at ¶ 5, 429 P.2d at 963. The plaintiff's suit alleged negligence on the part of the first defendant for parking his vehicle on a bridge "in the main traveled part of the highway." *Id*. at ¶ 2, 429 P.2d at 963. It also alleged negligence against the second defendant for traveling 60 miles per hour where the speed limit was 20 miles per hour, and failing to keep a proper lookout. *Id*. at ¶¶ 5, 429 P.2d at 963. Plaintiff argued that, because the first defendant's vehicle's location was a violation of 47 O.S. §§ 11-1001 and 11-1003, it constituted negligence per se, and when combined with the negligence of the second defendant, the issue of proximate cause became a question of fact for the jury. *Id*. at ¶ 12, 429 P.2d at 964. The defendant, however, contended that the alleged negligent parking merely furnished a condition and the injury was caused by a subsequent independent act. *Id*. at ¶ 13, 429 P.2d at 964.

The court responded:

> Briefly stated, the defendant Caldwell parked his vehicle on a well-lighted bridge with ample unobstructed vision for vehicles coming from either direction ... Since there is but one inference which may reasonable be drawn from the evidence, the question of negligence is one for the court to determine as a matter of law. We conclude that plaintiff's evidence was insufficient to support a finding that the defendant Caldwell's parking on the bridge was the proximate cause of the collision and injury to Plaintiff.

*Id*. at ¶¶ 14, 16, 429 P.2d at 964. (Citations and punctuation omitted).

In *Mote v. Hilyard*, 1961 OK 40, 358 P.2d 844, a car had stopped about 2,000 feet west of the crest of a hill in the north lane of traffic. *Id.* at ¶ 3, 358 P.2d at 844. At that time, the plaintiff, who was traveling east, was stopping opposite the vehicle to engage in conversation with the driver. *Id.* The defendant was traveling west on the same highway, and after driving over the top of the hill, swerved to the left to avoid the stopped car, colliding instead with the plaintiff. *Id.* In the suit filed, the defendant alleged in his cross-claim that plaintiff stopped on the roadway without warning or signal and failed to put out flares or other warning devices in violation of state law. *Id.* at ¶ 5, 358 P.2d at 845. In response, the court noted that it was undisputed that the driver of an automobile, in the bright light of afternoon, "coming over the crest of the hill, had an unobstructed view of the accident area while more than 2,100 feet away." *Id.* at ¶ 8, 358 P.2d at 845. Accordingly, the court concluded that the plaintiff's negligence, if any, did not proximately cause or contribute to the collision, but was a mere condition. *Id.* at ¶9, 358 P.2d at 845, citing *Phillips Petroleum Co. v. Robertson*, 1952 OK 60, 207 Okl. 80,247 P.2d 501.

In *Sturdevant v. Kent*, 1958 OK 48, 322 P.2d 408, a case cited by the *Hilyard* court, the plaintiff struck the defendant's parked vehicle and brought an action against the defendant under a city ordinance requiring that vehicles be parked in a parallel position and not "as an obstruction to travel." *Id.* at ¶ 2, 322 P.2d at 409. Assuming that the defendant did in fact park his vehicle in direct violation of the ordinance, the court quoted the body of law which states, "if the negligence complained of merely furnished a condition by which the injury was possible and a subsequent independent act caused the injury, the existence of such condition is not the proximate cause of the injury." *Id.* at ¶ 3, 322 P.2d at 409 (Citations omitted). Noting that only about six feet of the defendant's truck extended out over the pavement, the court stated that "it occupied no greater part

12

of the street than it would have occupied had it been parked in a parallel position," as the road was 18 feet wide and the remaining 12 feet were unobstructed. *Id.* at ¶ 5, 322 P.2d at 410. Further, the driver reported that he saw the stopped vehicle from 300 feet away, and assumed that it was pulling into the driveway, paying no further attention to it until he was "right on it." *Id.* As the testimony indicated that the proximate cause of the collision was the negligent driving by the plaintiff, the court noted that "[d]riving an automobile in such a manner constitutes nothing more nor less than an invitation to disaster," citing further that "[a] motorist colliding with an automobile parked on the highway is guilty of negligence proximately causing the collision if he could have seen the parked automobile in time to avoid the collision." *Id.* at ¶ 6, 322 P.2d at 410, *citing* Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed., § 2641; *see also Norman v. Scrivner-Stevens, Co.,* 1949 OK 48, 201 Okla. 218, 204 P.2d 277.   In *Phillips Petroleum Co. v. Robertson,* 1952 OK 60, 207 Okla. 80, 247 P.2d 501, a Dodge automobile heading west on U.S. Highway 66, approximately three miles west of Sapulpa, Oklahoma, and a Ford automobile headed east, were traveling on the same highway. *Id.* at ¶3, 247 P.2d at 502.  Following the Ford vehicle, at approximately the same speed as the Ford (about 35 miles per hour), was a large International truck owned by Phillips Petroleum Company. *Id.* The truck was loaded with a winch, causing it to weigh approximately twelve tons. *Id.* The Dodge was driven by the plaintiff, and as the Dodge and Ford vehicles approached each other, the left rear wheel of the Ford came off the vehicle and rolled across the highway, striking the left front portion of the plaintiff's Dodge as the vehicles were passing. *Id.* at ¶4, 247 P.2d at 502.  The plaintiff attempted to avoid the wheel by pulling right toward the edge of the pavement. *Id.* The tire struck the plaintiff's vehicle and knocked it out of control. *Id.* The plaintiff's vehicle swerved to the left side of the highway, behind the Ford, and collided almost head-

13

on with the truck owned by Phillips Petroleum Company. *Id.* The Court came to the conclusion that at the speed at which the vehicles were traveling, the distance would have been covered by each of the vehicles in slightly more than one-half of a second. *Id.* at ¶ 5, 247 P.2d at 502. With the proof that the driver could scarcely move from the accelerator to the brake in that length of time, the Court determined that it would be almost impossible to say that anything done by the plaintiff or by the driver of the Phillips Petroleum-owned truck could have prevented the loss. *Id.*

The Court concluded that:

> The wheel struck the Plaintiff's car, the car swerved to the left of the road, the collision occurred. Anything else makes little difference in the legal conclusion which necessarily follows.

*Id.* at ¶ 5, 247 P.2d at 502.

The Oklahoma Supreme Court went on to hold:

> Assuming that defendant was guilty of negligence as charged (and there is very little if any proof of such negligence), there was no showing that the injury to plaintiff resulted directly and proximately therefrom. The only conclusion that can be reached is that this very regrettable accident would have occurred regardless of what defendant's driver did or didn't do and that no act on his part could have prevented it. This being so, it was error for the trial court to overrule defendant's motion for a directed verdict.

*Id.* at ¶10, 247 P.2d at 503.

## APPLICATION TO THE CASE AT BAR

In the case at bar, Carol Kinney was involved in an automobile accident in which a dump truck driven by David Ralph Payne collided with the side of Mrs. Kinney's Mercedes. At the same time the Defendant, James Batesel, was sitting in his parked truck in the entryway to the housing addition which Mrs. Kinney was exiting. At no time during the accident was Defendant Batesel's truck in motion. Defendant David Ralph Payne, who was driving the dump truck that collided with

Mrs. Kinney, crossed over double yellow lines on the roadway entering the oncoming lane of traffic without braking, before colliding with Mrs. Kinney. The Plaintiff can offer no evidence to refute the facts already presented which show that Mr. Batesel was anything more than a mere condition to the accident.

Whether the Defendant, James Batesel, was partially in the roadway or not is immaterial under the Federal Court's ruling in *Vogt* and the state court rulings in *Thor*, *Evans*, and *Sturdevant*. The focal point of the court in determining whether a vehicle is the proximate cause is not the motion or lack thereof of a vehicle, but the surrounding environment: whether daylight and distance provided surrounding moving vehicles with sufficient warning of the stopped vehicle's presence in their lane of travel. The prior Defendant David Ralph Payne passed Defendant Batesel's parked semi truck, crossing double yellow traffic lines in the roadway, before Mr. Payne collided with Mrs. Kinney, establishing that he was able to see and attempt to avoid, albeit in an unwise and incautious manner, the vehicle of Mr. Kinney. Under the reasoning of the *Mote* court, even if Mr. Payne struck Mrs. Kinney's vehicle while attempting to avoid a stopped vehicle in the roadway, the onus remains on the moving vehicles to avoid the accident. As a result, its is the moving vehicles that the body of case law points to as the proximate cause of the accident, even where a much greater portion of the roadway is blocked by a stopped vehicle than the facts in the underlying case indicate. The choice of the prior Defendant, David Ralph Payne, not to slow down upon viewing Mr. Batesel's vehicle from several blocks away was his own. The decision to cross a double yellow line and place his dump truck completely in the oncoming lane of traffic without braking was solely the decision of the prior Defendant, David Ralph Payne. Even if the named Defendants in this case were negligent in the performance or omission of some duty to Carol Kinney, no liability attaches because

15

there was no causal connection between such alleged negligence and Carol Kinney's injuries. Any such negligence, which is specifically denied by Defendants, was not the proximate cause of the alleged injuries to Mrs. Kinney.

As noted by the *Atherton* and *Jackson* courts, one cannot say that the conduct of the Defendant's partked car amounted to a "completed tort" as the parking fo the car in itself did not result in injury, and would not have resulted in harm to anyone "except for the negligence of another party." It was the subsequent, independent, and negligent acts of the prior defendants in the previous case, David Ralph Payne and Rock's Trucking Company, Inc., and Ms. Kinney's own negligence, that caused Ms. Kinney' injuries.

Defendants in the instant action had no control over David Payne's negligent actions, nor did they have any control over Ms. Kinney's actions. It was solely Ms. Kinney's decision to pull out into traffic without properly checking the roadway. It was solely the decision of David Payne to not hit his brakes upon seeing the semi driven by James Batesel. It was solely the decision of David Payne to negligently cross double yellow traffic lines without braking, putting his fully loaded dump truck entirely in the oncoming lane of traffic. It was solely the negligence of David Payne and Carol Kinney that were the proximate causes of the injuries allegedly sustained by Carol Kinney.

The Defendants' actions merely furnished a condition by which Mrs. Kinney's alleged injury was possible, and a subsequent independent act, i.e., prior Defendant David Ralph Payne's negligent operation of his dump truck, caused the injury. Therefore, the existence of any condition created by any negligence of the Defendant Batesel, which is specifically denied, could not be the proximate cause of the injury. Therefore, Defendants may not be held liable for the resulting injuries and damages of Mrs. Kinney which were proximately caused by her own and Mr. Payne's negligence.

## II.
## OKLAHOMA'S STATUTORY LAW PROHIBITS AN ACTION FOR CONTRIBUTION OR INDEMNITY WHERE JOINT AND SEVERAL LIABILITY DOES NOT EXIST; THEREFORE, PLAINTIFF DOES NOT HAVE A VALID CAUSE OF ACTION AGAINST DEFENDANTS UNDER THE THEORY OF EQUITABLE ESTOPPEL

The elements of equitable estoppel are: (1) A false representation or concealment of facts; (2) Made with actual or constructive knowledge of the facts; (3) To a person without knowledge of or the means of knowing those facts; (4) With the intent that it be acted upon; (5) The person to whom it was made acted in reliance upon it to his detriment. *Carter v. Schuster*, 2009 WL 4829197 (Okla. 2009), citing *Gypsy Oil Co. v. Marsh*, 1926 OK 246, 121 Okla. 135, 248 P. 329.

The theory of equitable estoppel is employed to prevent one party from taking a legal position inconsistent with an earlier action that places the other party at a disadvantage. *Bowen v. Tucker*, 2007 OK CIV APP 57, ¶ 14, 164 P.3d 1155, 1158; *Capshaw v. Gulf Ins. Co.*, 2005 OK 5, ¶ 11, 107 P.3d 595, 602, f.28. Equitable estoppel prohibits a party from asserting a legal position that is inconsistent with its earlier actions. *Id.* Further, it holds a person to a representation made or a position assumed, where otherwise inequitable consequences would result to another, who has in good faith relied upon that representation or position. *Id.*

This rule ordinarily applies to inconsistent positions assumed in the course of the same judicial proceeding or in subsequent proceedings where the parties and questions are identical. *Capshaw, supra*, 2005 OK 5 , ¶ 11 , 107 P.3d 595, 602, f.28, *citing Panama Processes, S.A. v. Cities Service Co.*, 1990 OK 66, ¶¶ 21-22, 796 P.2d 276, 287-88, and *Messler v. Simmons Gun Specialties, Inc.*, 1984 OK 35, ¶ 18, 687 P.2d 121, 128. The intention that misrepresentation or concealment of real facts be acted on may be inferred from circumstances. *Gypsy Oil Co. v. Marsh*, 1926 OK 246, ¶30, 121 Okla. 135, 248 P. 329, 330. Representation or concealment of the real facts may arise from

17

the silence of the party under imperative or under an imperative duty an speak. *Id.*

In addition, given the facts of the underlying case, the requirements for joint and several liability to apply, as set forth in 23 O.S. § 15, are is noteworthy:

> A. Except as provided in subsection B of this section, in any civil action based on fault and not arising out of contract, the **liability for damages caused by two or more persons shall be several only and a joint tortfeasor shall be liable only for the amount of damages allocated to that tortfeasor.**
>
> B. **A defendant shall be jointly and severally liable for the damages recoverable by the plaintiff if the percentage of responsibility attributed to the defendant with respect to a cause of action is greater than fifty percent (50%).** If at the time the incident which gave rise to the cause of action occurred, a joint tortfeasor acted with willful and wanton conduct or with reckless disregard of the consequences of the conduct and such conduct proximately caused the damages legally recoverable by the plaintiff, the liability for damages shall be joint and several as to any such tortfeasor.

In 1973, the 34th Legislature of the State of Oklahoma enacted comparative negligence statutes 23 O.S. §§ 11, 12, based on an Arkansas statute which provided for a "modified" comparative negligence system, thereby abolishing the common law doctrine that contributory negligence of a plaintiff will preclude his recovery. *Laubach v. Morgan*, 1978 OK 5, ¶4, 588 P.2d 1071, 1072. At present in the United States, around thirty-three states have adopted, either judicially or by statute, some type of comparative negligence system. *Id.* In that regard, Oklahoma law does not bar the injured plaintiff from recovery unless the plaintiff's negligence is of a greater degree than the combined negligence of any persons, firms or corporations causing the injury. *Harrison v. St. Joseph's Regional Medical Center of Northern Oklahoma, Inc.*, 1995 OK CIV APP 61, ¶11, 904 P.2d 146; 23 O.S. § 13. Historically, if the negligence of two or more tortfeasors caused a single and

18

indivisible injury, the concurrent tortfeasors would be liable "in solidium," each being liable for the total amount of the award, regardless of his percentage of responsibility. *Laubach*, 1978 OK 5, ¶11, 588 P.2d at 1073-74.  Each defendant was jointly and severally liable for the entire amount of damages. *Id.*  This principle of entire liability is of questionable soundness under a comparative system where a jury determines the precise amount of fault attributable to each party.  *Id.*  The *Laubach* court, although its decision has been since overtaken by the comparative negligence statutes, *supra*, notes the following:

> Joint and several liability then will only exist where, for some reason, damages cannot be apportioned.... By abrogating joint liability, a simple general verdict between plaintiff and each defendant may be made. **In this situation no problem of contribution arises, because no defendant has a basis upon which to seek contribution from a co-defendant**.

*Id.* at ¶16, 588 P.2d at 1075 (Citations omitted). In short, Oklahoma's theory of modified comparative negligence allows recovery to an injured party if that party is less than 50 percent at fault.  However, joint and several liability is permissible only where the plaintiff bears no apportionment of fault for their own injures. *American Agency Systems, Inc. v. Marceleno*, 2002 OK CIV APP 79, ¶ 18 , 53 P.3d 929, 935, *citing Nat'l Union Fire Ins. Co. v. A.A.R. Western Skyways, Inc.*, 1989 OK 157, § 14, 784 P.2d 52, 56; 23 O.S. §§ 13, 14.  Where the plaintiff is assigned any degree of fault, the plaintiff may only recover from each tortfeasor that tortfeasor's proportionate share of responsibility based on degree of fault. *Id.*; *see also* 23 O.S. §§ 13, 14; 85 O.S. § 44.  No grounds for contribution arise under Oklahoma's provision, rendering Plaintiff's factually unsupported demands for reimbursement in the underlying case even more puzzling.

## APPLICATION TO THE CASE AT BAR

Under the contributory negligence laws of Oklahoma, if Carroll Kinney were considered fault-free in the underlying accident, then she would be able to recover all of her damages from either defendant, as they would be considered jointly and severally liable under Oklahoma law, and a right of contribution would then exist against the non-paying defendant. However, under Oklahoma precedent, which Plaintiff admits knowing at the time of its liability decision, because Ms. Kinney has some portion of fault, then she only receives a pro-rata share of damages in the amount for which each defendant is liable. As a result, no defendant is required to pay more than its portion of fault. Under this law, Progressive was only required to pay its percentage of self-assigned fault to Carroll Kinney. Progressive self-assigned 85 percent of the liability to itself, indicating its willingness, under this precedent, to take a stance as to liability. In doing so, Plaintiff simultaneously barred joint and several liability with the other defendants by assigning some fault to Mrs. Kinney. Given Plaintiff's assignment of liability and the applicable Oklahoma provisions, Defendants were reasonable in acting in reliance on Plaintiff as having paid merely Plaintiff's proportionate share of damages. Instead, Plaintiff now not only claims that a right of contribution exists against Defendant for the amount that Plaintiff paid to Mrs. Kinney, but claims that it paid more than its pro-rata share of liability. In fact, Progressive has not produced any documentation showing that the amount paid by Progressive was in excess of its percentage of self-assigned fault, or how it arrived at the settlement amount which it chose to pay to Mrs. Kinney. In fact, Plaintiff has failed to establish a factual and evidential foundation for its suit against Defendants.

Further, given the facts of the loss, no reasonable jury could find Mrs. Kinney fault-free. In fact, both Plaintiff's and Defendants' expert investigations found that some percentage of fault lay

20

with Mrs. Kinney in the underlying accident. Oklahoma precedent establishes that joint and several liability is only available in the event of a fault-free plaintiff.  As a result, no matter Plaintiff's liability determination, joint and several liability would not apply to the underlying set of facts.

Clearly, the elements of equitable estoppel are met in this case.  First, Plaintiff acted to conceal its liability decision as pertains to this case by refusing to divulge the portions of its claim file to Defendants Batesel, Trinity Brick Corporation, LLC, and Trinity Brick Corporation, Inc. Secondly, Plaintiff and Plaintiff's counsel made the representation that Defendants could be liable for contribution as Plaintiff had paid an obligatory sum for the full amount of Mrs. Kinney's damages, rather than its 85-percent share.  Thirdly, it was Plaintiff's intent that Defendant have no way of knowing that Plaintiff had issued a decision which barred joint and several liability or, in fact, assigned liability in such a manner at all. Fourth, Plaintiff's suit against Defendants demanding contribution in a substantial sum which exceeds the 15 percent of damages assigned to Defendant Batesel by Plaintiff, and a refusal by Plaintiff to issue any documentation supporting sum issued to Mrs. Kinney indicates Plaintiff's intent that Defendants act on Plaintiff's change in position without knowledge or understanding of Plaintiff's liability assessment or the legal consequences thereof. Finally, Defendants Batesel, Trinity Brick Corporation, LLC, and Trinity Brick Corporation, Inc, have acted in reliance upon Plaintiff's representation in proceeding with the lawsuit and meeting the ongoing demands of litigation as this case progresses. In short, Plaintiff initially made a representation which would lead Defendants to believe that Plaintiff (a) was not paying more than its percentage of liability, and (b) had no grounds to file a claim for contribution against Defendants. Plaintiff has, with this suit for contribution, taken a legal position inconsistent with an earlier action that places Defendants at a disadvantage.  This comprises the essential fact requirement to establish

21

the applicability of equitable estoppel.

The Plaintiff's allotment of liability shows that, by Plaintiff's own understanding, this case is <u>not</u> one in which damages "cannot be apportioned" among the parties. Further, the original plaintiff, Mrs. Kinney, was herself at fault for a certain percentage of the negligence which led to her injuries. While her recovery is allowed under Oklahoma statutes, she may only recover from each defendant the percentage of the amount of damages for which that defendant is found liable. Plaintiff admits that it considered itself liable for only 85 percent of Mrs. Kinney's damages, and in fact informed Defendant State Auto of its decision. However, Plaintiff still attempts to recover a portion of the monies that it then paid out to Mrs. Kinney from Defendants, while withholding its prior liability decision. Certainly, Plaintiff must be aware that its earlier decision would make it responsible for only 85 percent of Mrs. Kinney's damages, and bar it from recovering any of that 85 percent of damages for which it was responsible, from Defendants. Further, such an allotment of liability would severely hinder any action by Plaintiff against Defendants for contribution under joint and several liability.

Certainly, there is no statutory authority, given the percentages of fault which Progressive self-assigned to each party, that would allow Plaintiff to assume that it was entitled to subrogate or assert a contribution claim against Defendants. Further, Plaintiff has represented that Defendants are in fact eligible for a claim of indemnity or contribution in the case at bar. Clearly, Plaintiff's case against Defendants and null and void and unsupported by any Oklahoma precedent given the underlying facts and Plaintiff's own liability assessment. Given the above, the elements of equitable estoppel are met and Defendants request that this Court dismiss Plaintiff's case under the theory of equitable estoppel.

22

## CONCLUSION

The facts, as alleged by the Plaintiff, do not support a theory of liability against the

Defendants, and therefore, Defendants' Motion for Summary Judgment should be sustained,

along with any other relief the Court deems just and equitable.

Respectfully submitted,

s/Maurice G. Woods, II
MAURICE G. WOODS, II, OBA #16582
McATEE & WOODS, P.C.
410 N.W. 13th Street
Oklahoma City, OK  73103
Telephone: (405) 232-5067
Facsimile:  (405) 232-0009
mauricew@mcateeandwoods.com

## CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on February 16, 2010, I electronically transmitted Defendant's Motion for Summary Judgment and Brief in Support to the Clerk of the Court using the ECF System for filing.  Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Brad L. Roberson, OBA #18819
Dawn M. Goeres, OBA #21923
Pignato, Cooper, Kolker & Roberson, P.C.
1120 Robinson Renaissance
119 North Robinson
Oklahoma City, OK  73102
Telephone: (405) 606-3333
Facsimile:  (405) 606-3334
E-Mail:  brad@pclaw.org
E-Mail:  dawn@pclaw.org
*Attorneys for Plaintiff*

s/Maurice G. Woods, II
MAURICE G. WOODS, II

23